IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NELDA SALCEDO,

     Plaintiff,

v.                                                          Civ. No. 17-646 KK/JHR

CITY OF SANTA FE and
SANTA FE POLICE DEPARTMENT,
City Police Officer BRYAN MARTINEZ,
and such other officers yet to be identified,

     Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS[1]

**THIS MATTER** comes before the Court on Defendants' Motion to Dismiss (Doc. 6), filed June 21, 2017. Plaintiff Nelda Salcedo ("Plaintiff" or "Ms. Salcedo") filed a Response on July 21, 2017. (Doc. 14.) Defendants filed a Reply on July 28, 2017. (Doc. 15.) The Court has reviewed the parties' submissions and the relevant law, and is otherwise fully advised. For the reasons that follow, the Court **Grants** the Motion, and dismisses Plaintiff's Complaint with prejudice in part, and without prejudice in part.

**BACKGROUND**

For the purpose of ruling on Defendants' motion to dismiss, the Court assumes that the following facts, taken from the complaint, are true. *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016). ("In reviewing a motion to dismiss, [the Court] accept[s] the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff."). On or about December 19, 2013, Ms. Salcedo requested and obtained an Order of Protection from the Second

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case. (Docs. 8, 9, 10.)

Judicial District Court of New Mexico against her husband, Raymond Garcia ("Mr. Garcia") restraining and forbidding him from unauthorized contact with her, pursuant to "NMSA 1978, § 40-13-1, *et seq.*"[2] (Doc. 1-1 at ¶ 7.) Less than a month later, on or about January 11, 2014, Mr. Garcia broke into Ms. Salcedo's home in Santa Fe, New Mexico, and took her children. (Id. at ¶ 8.) Ms. Salcedo "fled from [her] home in her night clothes" which led her neighbors to call the police. (Id. at ¶¶ 8-9) Defendant Bryan Martinez, a City of Santa Fe Police Officer, arrived on scene whereupon Ms. Salcedo reported to him that her husband, Mr. Garcia, had taken her children and that she feared for her life. (Id. at ¶ 10.) As Ms. Salcedo was reporting the incident to Officer Martinez, Mr. Garcia drove by in his truck, which Ms. Salcedo identified for the officer. (Id. at ¶ 11.) Ms. Salcedo also gave Mr. Garcia's telephone number to Officer Martinez. (Id. at ¶ 12.) In Ms. Salcedo's presence, Officer Martinez contacted Mr. Garcia by phone. (Id. at ¶ 13.) After speaking with Mr. Garcia, Officer Martinez told Ms. Salcedo that "everything was alright[,]" and he gave her a domestic violence relations card. (Id. at ¶¶ 13-14.) Ms. Salcedo did not know what to do, and she stayed in her automobile for the remainder of the night. (Id. at ¶ 15.)

The following day, on January 12, 2014, Ms. Salcedo contacted the City of Santa Fe Police Department and, with the assistance of Defendant "Officers Yet to Be Identified," she recovered her children from Mr. Garcia and returned home. (Id. at ¶¶ 16-17.) These yet-to-be-

---

[2] It is not clear from the Complaint whether Ms. Salcedo obtained an *ex parte* temporary order of protection pursuant to NMSA 1978, § 40-13-4, or a full order of protection after a finding by the court of domestic abuse pursuant to NMSA 1978, § 40-13-5. A temporary order of protection is only valid until a hearing can be held, usually within ten days. *Id.* § 40-13-4(A)(3). Because the incidents alleged in Ms. Salcedo's complaint occurred on January 11-13, 2014, more than ten days after she obtained the order of protection, whether Ms. Salcedo's order of protection was granted under Section 40-13-4 or 40-13-5 is significant, because an order under Section 40-13-4 may have no longer been valid at the time of the alleged incidents. However, the Court must accept as true all well-pleaded factual allegations in the complaint "and view them in the light most favorable to the plaintiff." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017); *David v. City & Cty. of Denver*, 101 F.3d 1344, 1352 (10th Cir.1996). Therefore, the Court will assume for purposes of this Motion that Ms. Salcedo's Order of Protection, whether granted under Section 40-13-4 or 40-13-5, was valid at the time of the alleged incidents.

identified City of Santa Fe police officers who assisted Ms. Salcedo in recovering her children, became aware during the search for, and recovery of, the children that Mr. Garcia had broken into Ms. Salcedo's house when he took the children, and that, by entering her home, he had violated an Order of Protection. (Id. at ¶ 17, 18.)

Later that same day, Ms. Salcedo called the City of Santa Fe police to report that Mr. Garcia was at her home, and that he was being aggressive. (Id. at ¶ 19.) The unnamed City Of Santa Fe police officers who were dispatched to investigate the disturbance told Ms. Salcedo that they "could or would not" do anything; that the "Temporary Restraining Order" was not valid and would not be enforced; and that she "would be better off at a shelter." (Id. at ¶ 21-22.) Ms. Salcedo reiterated to the officers that Mr. Garcia was in violation of a restraining order and that he was being emboldened to take further aggressive action. (Id. at ¶ 23.)

Given the officers' unsatisfying handling of her report, Ms. Salcedo went to a family shelter. (Id. at ¶ 24.) And, with the aid of the staff of the family shelter, she made an appointment to go to the Santa Fe Courthouse on January 13, 2014, to check the status of the restraining order, and, if necessary, to obtain an extension or a new order. (Id. at ¶ 25.) While Ms. Salcedo was on her way to the her appointment at the courthouse, Mr. Garcia brutally attacked her—stabbing her several times and causing severe injuries that required that she be hospitalized. (*Id.* at ¶¶ 26-27.)

This lawsuit arises out of the foregoing events. In her Complaint, Ms. Salcedo alleges several theories of liability against Defendants[3] (the City of Santa Fe Police Department, Officer

---

[3] Ms. Salcedo does not specify whether Defendant Martinez and yet to be identified officers are being sued in their individual or official capacities. "[W]hen a plaintiff does not allege capacity specifically, the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995); *see also Pride v. Does*, 997 F.2d 712, 715 (10th Cir. 1993) ("[W]here the complaint fails to specify the capacity in which the government official is sued, we look to the substance of the pleadings and the course of the proceedings in order to determine whether the suit is for individual or official liability.") Factors indicating that a state official has been

3

Bryan Martinez, and such other Defendant Officers yet to be identified) under the New Mexico Tort Claims Act. Specifically, Ms. Salcedo points to Defendants' failure to conduct an investigation, failure to act to protect her, failure to take reasonable steps and follow proper police protocols in handling the incidents, and failure to take appropriate action in controlling Mr. Garcia as grounds for her tort claims of negligence, negligent and intentional infliction of emotional distress, and assault and battery. (Doc. 1-1 at ¶¶ 29-32.) Ms. Salcedo's Complaint also includes an equal protection claim, based upon Defendants' alleged "failure to protect [her] under the laws and statutes of the State of New Mexico." (Id. at ¶ 32.) Finally, Ms. Salcedo alleges, broadly, that Defendants' "actions or lack thereof" were "taken under color of state law and [were] in violation of Plaintiff's Constitutional rights[, thereby] subjecting the Defendants to liability under 42 U.S.C. § 1983." (Id. at ¶ 31.)

In their Motion to Dismiss, Defendants argue (1) that Ms. Salcedo's Complaint has not stated a claim upon which relief can be granted because it fails to allege what constitutional right was violated, what the violation consisted of, or who committed the alleged violation; (2) that Ms. Salcedo's state law tort claims under the New Mexico Torts Claims Act are barred by the statute of limitations; (3) that Defendant Officer Bryan Martinez and the other officers yet to be identified are entitled to qualified immunity; and (4) that Defendants City of Santa Fe and Santa Fe Police Department are not subject to municipal liability because Ms. Salcedo has failed to show that a municipal employee committed a constitutional violation and that the municipality's

---

sued in his personal capacity include a plaintiff's failure to allege that a defendant acted in accordance with governmental policy or custom, a request for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint. *Biggs*, 66 F.2d at 61. A review of Ms. Salcedo's Complaint indicates her intention to bring suit against the individual defendants in their individual capacities. First, Ms. Salcedo's Complaint does not allege that the municipal Defendant had a custom or policy that played a part in the alleged violations of federal law. Second, Ms. Salcedo seeks punitive damages. (Doc. 1-1 at 5.) Finally, Defendant Martinez raised a qualified immunity defense. (Doc. 6 at 4.)

4

custom or policy was the moving force behind any violation of her constitutional rights. (Doc. 6 at 3-7.)

In Response to Defendants' Motion to Dismiss, Ms. Salcedo maintains that her Complaint states viable claims under the New Mexico Tort Claims Act. (Doc. 14 at 2.) She maintains, further, that the Complaint includes viable claims pursuant to Section 1983— arguing that she has stated an equal protection claim arising from gender and/or marital status discrimination (Doc. 14 at 5-6.); and two due process claims premised, respectively, upon a theory of state-created danger, and the Defendant-officers' failure to comply with the New Mexico Family Violence Protection Act ("NMFVPA")[4] by arresting Mr. Garcia. (*Id.* at 6-7.) The Court examines the viability of each of Ms. Salcedo's claims in turn.

**ANALYSIS**

### I. The Legal Standards Governing a Motion to Dismiss

Dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6) is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim [that] would entitle [her] to relief." *Ramirez v. Dep't of Corr., Colo.*, 222 F.3d 1238, 1240 (10th Cir. 2000) (quotation omitted). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's . . . complaint alone is legally sufficient to state a claim for which relief may be granted." *Broker's Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135 (10th Cir. 2014). Accordingly, all well-pleaded factual allegations in the complaint are accepted as true and are viewed in the light most favorable to the non-moving party, *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013), but the pleadings must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

---
[4] NMSA 1978 § 40-13-7.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("The plausibility standard is not akin to a probability requirement[.]"). To achieve facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* That is, the complaint must "make clear exactly *who* is alleged to have done *what* to *whom*[.]" *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). The Court "need not accept [a party's] conclusory allegations as true." *S. Disposal, Inc. v. Tx. Waste Mgmt.*, 161 F.3d 1259, 1262 (10th Cir. 1998). Nor are pleading deficiencies overcome by mere "arguments that extend beyond the allegations contained in the complaint." *Bauchman v. W. High Sch.*, 132 F.3d 542, 550 (10th Cir. 1997).

## II. Ms. Salcedo's State Law Tort Claims Under the New Mexico Tort Claims Act Are Barred by the Statute of Limitations.

Defendants argue that Ms. Salcedo's state law tort claims under the New Mexico Tort Claims Act ("NMTCA") are barred by the statute of limitations. (Doc. 6 at 4.) Ms. Salcedo's Response does not include a substantive response to this argument. The NMTCA provides that "[a]ctions against a governmental entity or a public employee for torts shall be forever barred, unless such action is commenced *within two years* after the date of occurrence[.]" NMSA 1978, § 41-4-15(A) (1977) (emphasis added). Here, Ms. Salcedo claims that the incidents giving rise to her cause of action under the NMTCA occurred between January 11, and January 13, 2014. (Doc. 1-1 at ¶¶ 8, 16, 19, 25, 26.) Ms. Salcedo filed her Complaint in state court on January 11, 2017, three years after the incidents giving rise to her claims. As such, Ms. Salcedo's state law tort claims are barred by operation of Section 41-4-15(A). Ms. Salcedo has not presented any argument or evidence that the statute of limitations should be tolled. Accordingly, Ms. Salcedo's NMTCA claims shall be dismissed with prejudice.

### III. Ms. Salcedo's Complaint Fails to State a Section 1983 Claim Upon Which Relief Can Be Granted

**The Law Governing a Section 1983 Claim**

Section 1983 does not create substantive rights; rather it provides a recovery mechanism for deprivation of substantive rights under the United States Constitution. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Specifically, it provides that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

To state a claim under section 1983, a plaintiff must allege (1) deprivation of a Constitutional right by (2) a person acting under color of state law. *Watson v. City of Kan. City, Kan.*, 857 F.2d 690, 694 (10th Cir. 1988). A plaintiff must plead that each government official, through the official's own individual actions, has violated the Constitution. *Ashcroft*, 556 U.S. at 676; *see also Wilson v. Montano*, 715 F.3d 847, 854 (10th Cir. 2013) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."). Generalized claims centered upon the deprivation of constitutionally-guaranteed rights, without plausible factual allegations supporting the claims, do not satisfy this standard. *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008).

**Plaintiff's Equal Protection Claim**

**The Law Governing an Equal Protection Claim**

The Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. "Equal protection

7

is essentially a direction that all persons similarly situated should be treated alike." *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 659 (10th Cir. 2006).

The failure to "provide police protection is subject to the equal protection clause under [S]ection 1983." *Watson*, 857 F.2d at 694. However, since there "is no general constitutional right to police protection," an equal protection claim arising out of an alleged failure to provide such protection is viable against individual officers only where the plaintiff demonstrates (1) that she is a member of a protected class; (2) that she was treated differently from similarly situated individuals who were not members of the protected class; and (3) that the officers' failure to provide police protection was motivated, at least in part, by a discriminatory purpose. *Id.*; *see Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265-66 (1977) (stating that a plaintiff in an equal protection action has the burden of demonstrating that a state actor intentionally discriminated against her because of her membership in a protected class); *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998) ("In order to assert a viable equal protection claim, plaintiffs must [show] that they were treated differently from others who were similarly situated to them."); *Villanueva v. Carere*, 85 F.3d 481, 485 (10th Cir. 1996) (stating that it is not necessary to demonstrate that the challenged action was taken solely for discriminatory purposes; it is necessary only to prove that a discriminatory purpose was a motivating factor). Additionally, to state a viable claim against a municipality (*i.e.*, the City of Santa Fe), the plaintiff must plausibly allege that "her injuries were the result of an unconstitutional municipal policy or custom." *Watson*, 857 F.2d at 695.

**The Complaint Does Not Allege a Plausible Equal Protection Claim**

As to her membership in a protected class, Ms. Salcedo argues that Officer Martinez and the unidentified officers who responded to the second break-in failed to provide police protection

"because she is a woman[,]" and/or because she is woman who is married to the alleged perpetrator of crimes that led her to seek police protection. (Doc. 14 at 5.) As a woman, Ms. Salcedo is unquestionably a member of a protected class. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 322 (1993). Further, in the context of equal protection, "subclasses" emerge—including, as is relevant here, "gender-plus" subclasses which are cognizable provided that there is "a corresponding subclass of members of the opposite gender." *Coleman v. B-G Maint. Mgmt. of Colo., Inc.*, 108 F.3d 1199, 1203-04 (10th Cir. 1997). Thus, it is conceivable that Ms. Salcedo is a member of a protected subclass comprised of women who are married to the perpetrators of criminal acts against them. This notwithstanding, Plaintiff's equal protection claim against Officer Martinez and the unnamed officers is not viable as pled.

As noted above, to state an equal protection claim the plaintiff must plausibly allege that she was treated differently from "others who were similarly situated[.]" *Barney*, 143 F.3d at 1312. Ms. Salcedo's Complaint wholly fails to allege facts from which it may reasonably be inferred that the officers treated her differently than they treated similarly situated men or, more specifically, that they treated her differently than they treated men who reported being the victim of a crime perpetrated by their spouses. *See id.* (holding that an equal protection claim brought by female prisoners against their jailers could not survive absent a showing that they were treated differently from similarly situated male prisoners); *Bond v. Atkinson*, 728 F.3d 690, 692, 694 (6th Cir. 2013) (holding that a Section 1983 equal protection claim brought by a woman who, having been shot by her husband, claimed that the failure of defendant-police officers to enforce laws against domestic violence and to confiscate guns from dangerous men constituted sex-based discrimination could not survive absent a showing that the officers "protect men from threats of domestic violence while failing to protect similarly situated women"). Plaintiff's failure to

9

plausibly allege disparate treatment is fatal to her equal protection claim against the individual officers. *See Barney*, 143 F.3d at 1312 ("In order to assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them.").

Nor does Ms. Salcedo's Complaint include sufficient allegations to state an equal protection claim against the municipality. The Complaint makes no reference to, and includes no factual allegations to support, a theory that City of Santa Fe (which, as discussed in Section IV of this Opinion, is the only municipal entity that could be subject to this lawsuit) had a policy or practice of affording fewer protections to women, or to women who are the victims of crimes perpetrated by their spouses, than are afforded to men who are similarly situated. *See Watson,* 857 F.2d at 694 (A plaintiff must allege that "she was injured by operation of the policy or custom."). The circumstances described in Ms. Salcedo's Complaint, standing alone, do not give rise to such an inference. *See Watson*, 857 F.2d at 695 (explaining that, normally, a plaintiff must point to facts outside the plaintiff's own case to support the allegation of an unconstitutional policy).

In summary Ms. Salcedo's Complaint does not contain allegations of fact sufficient to support an equal protection claim pursuant to 42 U.S.C. § 1983.[5] As such, the Court shall dismiss Ms. Salcedo's equal protection claim *without prejudice* to Ms. Salcedo's ability to seek leave of the Court to amend her Complaint as to this issue within twenty-one days of entry of this Order. Should Ms. Salcedo seek leave to file an amended complaint, she must attach a copy of her proposed Amended Complaint to her motion so that the parties may address, and the Court may determine whether granting such leave to amend would be futile. *See Brereton v. Bountiful*

---

[5] Because the Court finds that Ms. Salcedo has failed to state an plausible equal protection claim pursuant to 42 U.S.C. § 1983 for which relief may be granted, the Court does not address the issue of whether the individual defendants are entitled to a qualified immunity.

*City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.").

**Plaintiff's Due Process Claims**

As noted earlier, Ms. Salcedo contends that her Complaint states two viable due process claims: a substantive due process claim based upon a theory of state-created danger; and an otherwise undefined "due process" claim stemming from the officers' failure to arrest Mr. Garcia as, Ms. Salcedo argues, they should have done under the New Mexico Family Violence Protection Act. NMSA 1978, Section 40-13-7[6] Only the first of these theories is conceivably well-founded in the context of this case.

While a state statute may provide the basis for a *procedural* due process claim—*i.e.*, one based on an alleged deprivation of property or liberty interests, substantive due process claims are "founded upon deeply rooted notions of fundamental personal interests derived from the Constitution" and cannot be premised on a violation of state law. *Town of Castle Rock*, *Colo. v. Gonzales*, 545 U.S. 748, 756 (2005) (explaining that the "procedural component of the Due Process Clause" governs benefits to which a person is entitled by sources such as state law);

---

[6] Directing that law enforcement officers "shall be required to take whatever steps are reasonably necessary to protect [a domestic violence] victim from further domestic abuse," and listing available steps including: (1) advising the victim of the remedies available under the Family Violence Protection Act; the right to file a written statement, a criminal complaint and a request for an arrest warrant; and the availability of domestic violence shelters, medical care, counseling and other services; (2) upon the request of the victim, providing or arranging for transportation of the victim to a medical facility or place of shelter; (3) upon the request of the victim, accompanying the victim to the victim's residence to obtain the victim's clothing and person effects required for immediate needs and the clothing and personal effects of any children then in the care of the victim; (4) upon the request of the victim, assist in placing the victim in possession of the dwelling or premises or otherwise assist in execution, enforcement or service of an order of protection; (5) arresting the alleged perpetrator when appropriate and including a written statement in the attendant police report to indicate that the arrest of the alleged perpetrator was, in whole or in part, premised upon probable cause to believe that the alleged perpetrator committed domestic abuse against the victim and, when appropriate, indicate that the party arrested was the predominant aggressor; and (6) advising the victim when appropriate of the procedure for initiating proceedings under the Family Violence Protection Act or criminal proceedings and of the importance of preserving evidence. NMSA 1978 § 40-13-7(B)(1)–(6).

*Graves v. Thomas,* 450 F.3d 1215, 1220 (10th Cir. 2006) (explaining that alleged violations of state law do not provide a foundation for substantive due process claims). A state-law created benefit "that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its 'substantive' manifestations." *Town of Castle Rock*, 545 U.S. at 768 ("An indirect and incidental result of the Government's enforcement action does not amount to a deprivation of an interest in life, liberty, or property." (Alterations omitted)). Thus, Ms. Salcedo cannot allege a substantive due process claim based on Defendants' alleged failure to comply with Section 40-13-7, and because Section 40-13-7 does not entitle Ms. Salcedo to a "benefit," as that term is used in the context of procedural due process protections, a procedural due process claim based upon the officers' failure to abide by Section 40-13-7 is also ill founded. *See Graves*, 450 F.3d at 1220; *Town of Castle Rock*, 545 U.S. at 768 (rejecting the notion that a state statute governing the enforcement of domestic abuse restraining orders creates a protected "property interest" protected by the Fourteenth Amendment in having the subject of the restraining order arrested); *see also*, *Mathews v. Eldridge,* 424 U.S. 319 (1976) (setting forth the law governing procedural due process claims). In sum, Ms. Salcedo's invocation of Section 40-13-7 as grounds for a due process claim is legally ineffective.

**The Law Governing a Danger-Creation Substantive Due Process Claim**

The Fourteenth Amendment's Due Process Clause provides that "no State shall ... deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, Generally, the Fourteenth Amendment's Due Process Clause does not impose an affirmative duty on governmental personnel to aid citizens, "even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."

*DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989). Indeed, the Supreme Court has definitively held that a state is not required to provide its citizens with "particular protective services" under the Due Process Clause, and "failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause" because "[t]he Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *Id.* at 195-96. One exception to this rule, however, is a circumstance in which a governmental actor creates the danger to which a citizen is exposed. *Armijo v. Wagon Mound Pub. Schs.*, 159 F.3d 1253, 1260 (10th Cir. 1998); *see Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001) (stating that the "danger creation" exception applies only when a state actor "affirmatively acts to create, or increases a plaintiff's vulnerability to, or danger from private violence").

To state a prima facie case under a danger-creation theory, the plaintiff must show that: (1) state actors created the danger or increased the plaintiff's vulnerability to the danger in some way, (2) the plaintiff was a member of a limited and specifically definable group, (3) the defendants' conduct put the plaintiff at substantial risk of serious, immediate, and proximate harm, (4) the risk was obvious or known, (5) the defendants acted recklessly in conscious disregard of that risk, and (6) the conduct, when viewed in total, is conscience shocking.[7] *Armijo*, 159 F.3d at 1262-63. "Inaction by the state, in the face of a known danger is not" a sufficient basis for a danger-creation claim. *Graham v. Indep. Sch. Dist. No. I–89,* 22 F.3d 991, 995 (10th Cir.1994). Nor can such a claim be premised on the defendants' alleged failure to intervene. *Eckert v. Town of Silverthorne*, 25 F. App'x 679, 688 (10th Cir. 2001) (unpublished)

---

[7] The Tenth Circuit has held that to satisfy the "shock the conscience" standard, "the plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Armijo*, 159 F.2d at 1262. "[T]he Supreme Court has specifically admonished that a substantive due process violation requires more than an ordinary tort . . . ." *Id.*

("The danger creation theory focuses on the affirmative actions of the state in placing the plaintiff in harm's way. Plaintiffs cannot rely on [the d]efendants' failure to intervene[.]" (alteration omitted))

Because a plaintiff must show that the charged state entity or individual defendant actors created the danger or increased the plaintiff's vulnerability to the danger in some way, "if the danger to the plaintiff existed prior to the state's intervention, then even if the state put the plaintiff back in that same danger, the state would not be liable because it could not have created a danger that already existed." *Armijo*, 159 F.3d at 1263*; see also Currier*, 242 F.3d at 921 (explaining that state officials may be liable for injuries caused by a private actor where those officials created the danger that led to the harm; however, there is no constitutional duty to rescue individuals from an already harmful situation).

> The key to the state-created danger cases lies in the state actors' culpable knowledge and conduct in affirmatively placing an individual in a position of danger, effectively stripping a person of her ability to defend herself, or cutting off potential sources of private aid. Thus the environment created by the state actors must be dangerous; they must know it is dangerous; and, to be liable, they must have used their authority to create an opportunity that would not otherwise have existed for the third party's acts to occur.

*Armijo*, 159 F.3d at 1263 (alterations omitted).

**The Complaint Does Not Allege a Plausible Danger-Creation Due Process Claim**

Viewed against the backdrop of the foregoing legal principles, the allegations in Ms. Salcedo's Complaint clearly fail to state viable substantive due process claim based upon a danger-creation theory. The Complaint is devoid of allegations supporting an inference that Defendants used their authority or took affirmative actions to create the threat Mr. Garcia posed to her. On the contrary, Ms. Salcedo's allegations focus on the Defendants' *failure to act*. That is, Ms. Salcedo alleges that the officers: failed to conduct an investigation, failed to act to protect

her, and failed to take reasonable steps to control Mr. Garcia. (Doc. 1-1 at 4.) The failure to act does not give rise to a cognizable state-created danger claim. *Burella v. City of Phila.*, 501 F.3d 134, 147-48 (3rd Cir. 2007). Further, the Complaint is devoid of allegations plausibly demonstrating that any of the Defendants used their authority in a manner, or took affirmative actions, that increased Ms. Salcedo's vulnerability to Mr. Garcia's dangerousness. In other words, although she has alleged that Defendants were aware that Mr. Garcia was dangerous, Ms. Salcedo has not alleged facts from which it may reasonably be inferred that Defendants' actions placed her in a worse position than she was already in. *Currier*, 242 F.3d at 917; *see also DeShaney*, 489 U.S. at 201 (explaining that the state's awareness of the dangers an abused child faced played no part in their creation, nor did the state do anything to render the child any more vulnerable when it removed the child from his father and then returned the child to his father having found insufficient evidence to retain the child in the custody of the court). For the foregoing reasons, the Court finds that Ms. Salcedo's Complaint failed to allege facts sufficient to support a substantive or procedural due process claim pursuant to 42 U.S.C. § 1983 for which relief may be granted. The Court further finds it would be futile to allow her to seek leave to amend her complaint as to this issue. The Court will therefore dismiss her due process claim with prejudice.

### IV.     The Santa Fe Police Department is Not a Suable Entity.

The Defendants did not raise the issue of whether the Santa Fe Police Department is a suable entity. The Court addresses this issue *sua sponte*.

Ms. Salcedo alleged that Santa Fe Police Department is an official agency of the City of Santa Fe charged with the enforcement of the laws of the Municipality and the State of New Mexico. (Doc. 1-1 at ¶ 6.) Administrative departments of municipalities – such as law

enforcement agencies – lack legal identities apart from the municipality itself. As such, they are not suable entities, and claims against them are subject to dismissal under Fed. R. Civ. P. 12(b)(2). *See Henry v. Albuquerque Police Dep't*, 49 F. App'x 272, 274, n. 1 (10th Cir. 2002) (unpublished) ("The district court properly relied on an unpublished decision from this court holding that the Albuquerque Police Department lacks a legal identity apart from the City of Albuquerque"); *Biehl v. Salina Police Dep't*, 256 F. App'x 212, 215 (10th Cir. 2007) (unpublished) ("[T]he Police Department is a subsidiary of the city government and not directly subject to suit."); *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) ("Sheriff's departments and police departments are not usually considered legal entities subject to suit[.]"); *see also Stump v. Gates*, 777 F. Supp. 808, 816 (D. Colo. 1991) ("[L]ocal government departments have no greater separate identity from cities than do their officials when they are acting in their official capacities." (Emphasis omitted.)). In sum, since the Santa Fe Police Department is not a suable entity, Ms. Salcedo's claims against it must be dismissed.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED** and Plaintiff's Complaint is dismissed with prejudice in part and without prejudice in part.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Doc. 6) is **Granted** as follows:

1. Plaintiff's state law tort claims under the NMTCA are barred by the statute of limitations. The Court, therefore, GRANTS Defendants' motion to dismiss those claims *with prejudice.*

2. Plaintiff's Complaint has failed to state a claim upon which relief can be granted pursuant to 42 U.S.C. § 1983. The Court, therefore, GRANTS Defendants' motion to dismiss

Plaintiff's equal protection claim *without prejudice* and Plaintiff is allowed to seek leave to amend her complaint and must attach a proposed Amended Complaint to her motion. Plaintiff's motion seeking leave to amend, if any, is due within twenty-one (21) days of the entry of this Order. The Court further GRANTS Defendants' motion to dismiss Plaintiff's due process claim *with prejudice.*

3. Plaintiff's claims against the Santa Fe Police Department are dismissed *with prejudice*.

**IT IS SO ORDERED.**

_____
**KIRTAN KHALSA**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**